## Bonitz Trust

*James F. Crawford, 3rd,* for accountant.

*Howard O. Stevens,* for Patricia D. Matties.

*Robert L. Zeman,* for Union National Bank of Pittsburgh, guardian of the minor children of Walter Sherrill Moses.

BOYLE, P. J., September 5, 1972.—The question to be determined in this audit is whether a widow who would take as an "heir at law" of her deceased husband, under the will of his grandaunt, forfeits her right to distribution by her remarriage prior to the time when the gift to her husband's "heirs at law" is to take effect in enjoyment.

Elizabeth Taylor Bonitz died testate on July 31, 1949, a resident of the City of Pittsburgh, County of Allegheny, Pa. Her will, dated March 24, 1948, and codicil thereto, dated March 28, 1949, were duly probated and are of record in the Office of the Register of Wills of Allegheny County, Pa., in Will Book, Vol. 293, p. 391.

Under article third of her will, three equal parts of the residuary estate were bequeathed in trust to trustees, for the benefit of Norma Bonitz Moses, Albert Brandon and Hilda Bonitz Cannady.

The trust for Norma Bonitz Moses terminated upon her death on May 1, 1958, and by a decree entered November 19, 1958, the balance of the principal therein was distributed to the trustees, and added to that held for the benefit of Hilda Bonitz Cannady, pursuant to subparagraph (2)(e) of article third of the will.

The pertinent part of article third of the said will provides:

"(1) One part to my Trustees hereinafter named, to invest and reinvest the same without being restricted to investments legal for trust funds under the laws of the Commonwealth of Pennsylvania, and to distribute the income and principal thereof as follows:

"(a) The net income therefrom shall be payable in equal quarterly installments or more frequently, within the sole discretion of my Trustees, to Hilda Bonitz Cannady, of Oxford, North Carolina, for and during the period of her life.

"(b) My Trustees shall have authority, in their discretion, to use all or any portion of the principal held in trust hereunder for the benefit of the said Hilda Bonitz Cannady as in their judgment it shall be necessary to take care of any pressing want or unforseen emergency in the life of the said Hilda Bonitz Cannady.

"(c) No part of the income or principal payable to the said Hilda Bonitz Cannady hereunder shall be liable to execution, attachment, sequestration or other process for the payment of the debts of the said Hilda Bonitz Cannady, and she shall not be entitled to assign or anticipate her interest hereunder.

"(d) My Trustees shall have discretion to determine whether or not any stock dividends received by the trust estate, or any gains from the sale or exchange of capital assets, shall be deemed to be principal or income under this trust.

"(e) At the death of the said Hilda Bonitz Cannady, the trust shall terminate, and the remaining principal thereof, including any addition thereto pursuant to the provisions of paragraph (2) of this Article Third, shall be distributed to her heirs at law, as determined by the laws of the Commonwealth of Pennsylvania."

The pertinent part of the codicil provides:

"First: Sub-paragraph (e) of paragraph (1) of article Third of my said Last Will and Testament is hereby revoked and the following sub-paragraph substituted therefor:

"(e) At the death of the said Hilda Bonitz Cannady, the remaining principal in the part of my estate held for her, including any addition thereto pursuant to the provisions of paragraph (2) (e) of article Third of my said Last Will and Testament shall be further held in trust by my Trustees hereinafter named for the benefit of Walter Sherrill Moses, the son of my nephew, Daniel D. Moses, and the income therefrom accumulated until he shall have attained the age of twenty-one (21) years, and thereupon such accumulated income shall be paid to him, and thereafter the income of this part of my estate shall be paid to him in quarterly installments, or more frequently, within the sole discretion of my Trustees. Upon his attaining the age of thirty (30) years, one-half (½) of the principal of the trust held for him shall be distributed to him, and upon his attaining the age of forty (40) years, the trust shall terminate, and the remaining principal thereof shall be distributed to him, free and clear of the trust. In the event of his death prior to the distribution as provided for herein, the trust shall terminate, and the remaining principal shall be distributed to his heirs at law, as determined by the laws of the Commonwealth of Pennsylvania. No part

of the income or principal payable to him hereunder shall be liable to execution, attachment, sequestration or other process for the payment of his debts, and he shall not be entitled to assign or anticipate his interest hereunder."

The said Hilda Bonitz Cannady died on October 12, 1971, a resident of Oxford, North Carolina, and on October 18, 1971, J. P. Harris, Jr., qualified as administrator c.t.a. of her estate.

Walter Sherrill Moses, a grandnephew of testarix, died on April 4, 1960, aged 28 years, intestate, a resident of Miami, Dade County, Florida, leaving to survive him his widow, Patricia D. Moses, and two minor daughters, Sherill Lee Moses and Sandra Day Moses, whose present ages are 19 and 17, respectively, they having been born on November 24, 1952, and March 23, 1954.

The said Patricia D. Moses, the widow, on June 22, 1960, married John Charnecki. This marriage was terminated by the death of John Charnecki on March 18, 1964.

The said widow of Walter Sherrill Moses, then Patricia D. Moses Charnecki, on January 8, 1966, married Rev. James Warren Matties, which marriage still subsists. She and her two said daughters, Sherrill Lee Moses and Sandra Day Moses, presently reside with the said Reverend Matties in McMurray, Pa.

Since the widow of Walter Sherrill Moses remarried first on June 22, 1960, and again on January 8, 1966, both dates being prior to the date of death of the life tenant, Hilda Bonitz Cannady, which occurred on October 12, 1971, the question is presented as to whether she qualifies as one of the heirs at law of Walter Sherrill Moses, as determined by the intestate laws of the Commonwealth of Pennsylvania, and is, therefore, entitled to participate in the distribution

of the trust under the provisions of Article first (e) of the codicil to the will of Elizabeth Taylor Bonitz. If she is entitled to participate as an "heir at law," she would be entitled to one-third of the trust assets, the remaining two-thirds being distributable equally to the two daughters of Walter Sherrill Moses. If she is not entitled to participate, the entire trust assets would be distributable in equal shares to the said two children.

The Orphans' Court Division of the Court of Common Pleas of Washington County, Pa., by order dated March 1, 1972, appointed the Union National Bank of Pittsburgh, Pittsburgh, Pa., guardian of the estates of the said minor children of Walter Sherrill Moses, to represent their interests in this proceeding and to receive any property which is distributable to them as heirs of the said Walter Sherrill Moses.

All parties in interest are before the court and represented by able counsel.

The auditing judge believes that the construction of the language of paragraph "FIRST: (e)" of the codicil is governed not only by the intention of testatrix but also by the provisions of section 14 (4) of the Wills Act of April 24, 1947, 20 PS §180.14, as amended, which provides:

"Section 14 . . . In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

". . .

"(4) . . . A devise or bequest of real or personal estate, whether directly or in trust, to the testator's or another designated person's 'heirs', or 'next of kin', or 'relatives', or 'family' or to 'the persons thereunto entitled under the intestate laws', or to persons de-

scribed by words of similar import, shall mean those persons, including the spouse, who would take under the intestate laws if the testator or other designated person were to die intestate at the time when such class is to be ascertained, a resident of the Commonwealth, and owning the estate so devised or bequeathed: Provided, however, that the share of a spouse, other than the spouse of the testator, shall not include the (ten thousand dollar) allowance under the intestate laws. The time when such class is to be ascertained shall be the time when the devise or bequest is to take effect in enjoyment. Amended, P. L. 1970, Act No. 25, effective February 24, 1970."

The rules governing the determination of a testator's intent are set forth in Carter Estate, 435 Pa. 492, 496-497, as follows:

"The law and the legal principles governing the interpretation of wills is well settled, but their application to poorly or ambiguously drawn wills (especially to holographic wills and lengthy testamentary trusts) is often difficult. The pertinent principles may be thus briefly summarized: A testator's intent, unless unlawful, shall prevail; that intent shall be ascertained from a consideration of (a) all the language contained in his will, and (b) his scheme of distribution, and (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (e) canons of construction will be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain. Houston Estate, 414 Pa. 579, 201 A. 2d 592; Burleigh Estate, 405 Pa. 373, 175 A. 2d 838; Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Es-

tate, 398 Pa. 470, 159 A. 2d 197; Lewis Estate, 407 Pa. 518, 520, 180 A. 2d 919. See also, Benedum Estate, 427 Pa. 408, 235 A. 2d 129."

The auditing judge perceives no conflict between the expressed intention of testatrix in the case at bar and the application of section 14 (4) of Wills Act to section "First (e)" of the codicil which controls the distribution which is to be made of the balance in the account of the trustee.

While a remarriage was not involved in Jury Estate, 381 Pa. 169, the statement of principle by the Supreme Court at pages 173-74 is applicable to the case at bar:

"We agree with the learned court below that there is nothing in the testatrix's will manifesting an intention to exclude her husband from the designation of 'heirs' under the intestate law. Section 14 (4) of the Wills Act of 1947, P. L. 89, 20 PS §180.14 (4), declares that, unless a contrary intention appears *in the will,* a devise or bequest to heirs shall be held to include the surviving spouse. It is true that, at common law, neither spouse was considered an heir as to the other's real estate. But, both before and after the Intestate Act of 1917, P. L. 429, which made the surviving spouse a statutory heir of the other, the use of the word 'heirs' in a will was uniformly construed to include the surviving spouse if no contrary intent is expressed by the will: Barnard Estate, 351 Pa. 313, 314-315, 41 A. 2d 578. Such having been the established rule when the testatrix executed her will (June 18, 1941) as well as when she died (December 15, 1951), she is legally presumed to have understood and to have used the term 'heirs' in accordance with the meaning which the law ascribed to it. This is especially so since, admittedly, the will was professionally drawn. And, where the plain words of a will clearly disclose

the testatrix's intent, there is no occasion for testamentary construction: see Earle Estate, 369 Pa. 52, 56, 85 A. 2d 90, and cases there cited."

The question in the case at bar narrows down to the proposition as to whether a widow, otherwise entitled to a share in distribution as an "heir" of her husband, forfeits that right by her remarriage to another man after her husband's death and before the time for distribution arrives as provided in the will and as contemplated by section 14(4) of the Wills Act of 1947 set forth above. In other words by her remarriage does she cease to be a member of the class which takes the remainder of the trust at the death of the life tenant?

We find no authority in our decided cases in Pennsylvania which holds that a widow forfeits her right as an *heir* of her husband by reason of her remarriage to another man. Or, in more accurate terms, we do not find any authority which holds that she forfeits her right to inherit through her husband by reason of her remarriage during the pendency of a life estate after the termination of which she takes as one of his "heirs."

The cases holding that a widow forfeits her right to the widow's or family exemption by reason of her remarriage do not apply to a case where she claims as an heir of her husband. See Kern's Appeal, 120 Pa. 523.

The conclusion that the widow in the case at bar is entitled to share in the remainder of the trust as one of the "heirs" of her deceased first husband is supported by decisions in other jurisdictions. In Rhead's Estate, 288 Mich. 220, 284 N.W. 706, the Supreme Court of Michigan held:

"A woman by contracting a second marriage does not cease to be a widow within the meaning of the statute governing descent and distribution. In re

McArthur's Estate, 210 Cal. 439, 292 P. 469, 72 A.L.R. 1318."

See also 94 C.J.S. 618 and cases therein cited.

The auditing judge holds that Patricia D. Matties, formerly Patricia D. Moses, the widow of Walter Sherrill Moses is entitled to share equally with her two children, Sherrill Lee Moses and Sandra Day Moses, in the remainder of trust created under the will of Elizabeth Taylor Bonitz for Hilda Bonitz Cannady.

A decree will be entered in accordance with this opinion.